Mr. Solomons, good afternoon. Good afternoon. I'd ask for two minutes for rebuttal. My name is Mark Solomons. This is a black lung claim, and I'm representing the employer and the insurance carrier. A couple of points I think I'd like to make preliminarily to the main point of my arguments, and maybe this is the main point of my argument, but that over the 15 or so years that the Department of Labor has allowed claims to file as many claims as they want under the black lung program, no matter how many times they're denied, this has turned into an absolute nightmare for employers. There's no way to reserve liability. There's no way to do all of the ordinary things that insurers do. You're not suggesting here that the administrative law judge's determination is not supported by substantial evidence. That's not your argument, is it? No. Your argument essentially is that the mine worker is just getting too many bites of the apple. No. It's not it either. My argument here is that there was, in this claim, his fourth claim. Well, I thought the judge also determined that there was insufficient evidence in the record to support a finding of pneumoconiosis. Well, I mean, kind of mixing up the decision. The man had a totally disabling impairment. I think that what that was... The name of it was adult-onset asthma. As a matter of fact, though, is it accurate that what the ALJ said at the fourth stage was, the fourth go-round was, there's not enough evidence here to say that pneumoconiosis is a contributing part of this? Well, I don't think the administrative law judge in the fourth claim found that pneumoconiosis had anything to do with it. I mean, contributing or otherwise. In the fifth claim, nobody found that all of a sudden pneumoconiosis started to contribute. What happened in the fifth claim was that the medical evidence relied upon by the administrative law judge, which constituted, was the testimony of a Dr. Cohen, was that he never had asthma at all going back to 1993. He always... At the fourth step, there was no finding that there was no pneumoconiosis present. Isn't that accurate? Well, I think that, you know, the problem we run into with these is it's always kind of a word game. There was a positive, affirmative finding of what the man had. It was adult-onset asthma. That's what the ALJ found. The ALJ said, of course he would have... The other side of that coin is it wasn't pneumoconiosis. It doesn't become pneumoconiosis two years later. No, I'm sorry. May I press this a little bit more? Just because the administrative law judge found asthma does not exclude the presence of pneumoconiosis. It does if it is based upon exactly the same kind of medical data that was used to determine that he had adult-onset asthma. Is there anything to that effect in the record, Mr. Solomon? Yes, there is. That these are mutually exclusive diagnoses? Because that's not anything I've seen, and maybe I missed it, but I've spent a lot of time in this record, and I haven't seen anywhere where any medical person said, it's got to be this or that. It can't be some of each. Well, in the fourth claim, the administrative law judge found, based upon this data, that it was asthma. In the fifth claim, based upon testimony of another doctor, he didn't say it was asthma that was aggravated by black lung, which is not something that can happen, I suspect. He said it never was asthma. The same data, the same kind of medical information that was relied upon by the administrative law judge in the first claim to reach the conclusion that it was asthma. Okay, this is crucial, because you have just said something which you have said repeatedly in your briefing. I think I counted up eight or nine times where, in different ways, you say the same thing, which is, no, you say repeatedly that there was no new relevant development or no evidence at all of a change. And I could, we could walk through it, but it's said over and over again that there was nothing new to indicate something different. And yet, well, let me ask you, I mean, would you agree that that's sort of a linchpin of your argument about race judicata and collateral estoppel, that it wasn't that there was nothing new in the evidence, it was only a new expert looking at the same evidence and saying something different? Well, they got some more of the same kind of evidence, but it didn't show anything different than the other evidence. Well, that's where I got a problem with what you're telling me, because your opponents say, and I've looked at the numbers, that Dr. Cohn did his own blood gas diffusion test and it showed a deterioration. That was a difference, and a real difference, in this guy's condition. And Dr. Cohn went out of his way to say, in fact, these kinds of tests, over every time he's been looked at, there's been a deterioration, including the most recent time when I've looked at it and did the test in my lab. All right. Now, what Dr. Cohn said was that he never had asthma, period. Stick with my question. Did he not say there was a difference in the testing that showed a deterioration in the blood gas diffusion? Well, the guy was deteriorating all along, but that's not, I mean, asthma is, it can progress, and that's what the other doctor said, was that the asthma was progressing. The question is, what did he have, not whether it was getting worse, because whether it was getting worse or not was not something that was really relevant to the original determination in the fourth claim. Yes, I've said there was no change, because there was no change. The question is, did he have asthma that was getting worse? You say there was no change. If there's physical testing which shows a change in the person's health, how can you take the position that there's no change? I understand from your perspective you want to say, well, that only shows the asthma got worse, but isn't an administrative law judge entitled to look at that evidence and say, well, that's a new and a different thing, and I'm going to hear what medical experts say about what this new and different thing tells us? Okay. But that's not this case. What Dr. Cohn found was that he never had asthma, he always had black lung, and then it kept getting worse. And so if he never had the black lung, then what they're doing here, well, if he never had asthma, what's going on here is a re-adjudication of the fourth claim, which was that all of those, everything that that medical condition established was asthma. If Dr. Let me He said always, he said it was always black lung. That's what he said. Yeah, I've read the report. From a strictly procedural standpoint, I mean, your argument to us here today is, in effect, that once there has been a statement about the cause of a person's physical problems, there can never be another and different look at that their health problem. No, I'm not saying that at all. I'm saying in this case, it was decided, and then they changed their mind in the next case. That's why it implicates collateral estoppel. Not because what could happen in some other case. I don't know what could happen in some other case. But the doctors had a bevy of new evidence to look at. Ten different x-rays, five separate medical reports to look at. The experts, the medical experts, concluded that pneumoconiosis was present. No, they didn't. The x-rays were irrelevant to this whole issue, because he didn't have x-rays. They didn't seem irrelevant to the doctor. Yeah, he didn't have x-ray pneumoconiosis. This condition that would characterize as asthma, maybe pneumoconiosis. But they were contesting whether there was anything new. Well, what you're suggesting, Your Honor, well, I don't know what you're suggesting, what I'm saying is that it is a violation. Well, I'll tell you what I'm suggesting. I'm suggesting that there was new evidence, and that there were new findings based on new tests and ten new x-rays. And what I'm saying is that new evidence in a setting like this doesn't make any difference unless the judge agrees with it. And that's what all the courts say. The Seventh Circuit said it. You've said it in a twirl. If he doesn't agree with the diagnosis the first time around, then all the new evidence, and there were people who agreed, who said it still was asthma. Well, you're saying that Kemele is stuck with the finding at the fourth step. Well, Your Honor, in any other kind of litigation, somebody would be, they would be stuck with a fourth judicial determination. Yes, they would be. But that's another, this is another question. In the face of different evidence. I mean, that's the kicker here. You want to dismiss the evidence from which Dr. Cohen was at least prepared to say to a medical degree of certainty and which the ALJ accepted, that when I look at the decline over time, including the most recent decline in the testing I've done, I conclude that there's legal pneumoconiosis, that there's a contributing factor here. He didn't say that. He didn't say that. I thought that's what the ALJ said. I don't know what the ALJ said. The doctor said the man never had asthma. That's what he said. He always had pneumoconiosis, and so what they're going, what it is... What did the ALJ say, Mr. Solomon? What did the ALJ say? Well, I don't know if I can look at it. I mean, what's the legal determination in the end? It wasn't that there was clinical pneumoconiosis, it was that there was legal pneumoconiosis, right? Well, I mean, the facts matter. I mean, the thing is that legal pneumoconiosis is a legal determination. First, that's what he decided. He didn't, but what he didn't decide was whether he was just re-litigating the fourth claim all over again based upon new evidence. Stick with me here for a second. If there's no res judicata under your theory, this is a complete... I don't have a theory, Mr. Solomon. I don't have a theory. I'm trying to get you to confront the other side's theory, so I'm articulating what I take their theory to be. I take their theory to be at least the theory of the person, Mr. Tameli. Am I saying his name right? I wouldn't want to... Kameli, I apologize. Mr. Kameli's position from that responsive brief appears to be, hey, they keep saying there was nothing different. There was something different, and the ALJ was entitled to rely on doctors saying there's something different here, because Suaro says if there's a physical change, a subsequent change in the person's health, you can look anew at what that person's health is like based on that new evidence. That's what I understand their pitch to be, and I think that's what Suaro says, so why is Suaro wrong? Suaro's not wrong in connection with this case. What Suaro says is you can't go and re-litigate the prior case. That's... as to all of the circuits in this area, and what they tried to do here was to re-litigate the prior case. They went to re-litigate whether he had asthma. So your position really comes down to once a determination of cause is made, that cannot be revisited? You know, I don't want to be put into a box on some other case. When there is a determination that a particular set of medical data establishes asthma, and that is final, then the fact that that condition may deteriorate or that condition may be reinterpreted by somebody later down the road, that should be barred. Could a minor have concurrent problems, could have aspects of asthma, and also have pneumoconiosis? No one said that in this case. I don't know, but there's no testimony. They're not exclusive illnesses, though, right? Probably not, but the thing is that there's no testimony that that is factually relevant to this case at all, or findings for that matter. Okay. You've got some time for rebuttal. Let's hear the other side. Good afternoon, Your Honors. My name is Cheryl Cowan, and I represent Leo Camelli. Ms. Cowan? In this particular case... You're dividing your argument time, I understand. We did divide our argument time eight minutes to me and seven minutes to the Department of Labor. In this particular case, there was new evidence presented in Mr. Camelli's fifth claim. The new evidence was that he had a deterioration in his pulmonary, in his diffusion capacity. Okay, but Ms. Cowan, why don't you speak directly to the argument Mr. Solomons made, which is deterioration tells you nothing about cause. I take that's his pitch, that the only thing they came forward with which was new was he continued to get worse, and that doesn't speak at all to cause, and cause was finally litigated, and that, in fairness, ought to be the end of it. What's the response to that? Well, the response to that is pneumoconiosis is a latent and a progressive disease process, and oftentimes it does not show until sometime after a minor retires. Well, I guess if I were Mr. Solomons' shoes, I'd be itching to jump up and say, yeah, but nobody said this was the result of a progression of pneumoconiosis. The only evidence that the ALJ relied on was a statement by Dr. Cowan that he had never had asthma. He had always had black lung, and that that's a direct, direct is the wrong word, that that's a collateral assault on what should have been a final determination. I think what Dr. Cowan testified to, or stated, was that he could not diagnose asthma based upon this set of data that he had, and that would be Appendix 232. He looked at the new Mr. Comelli's complaints, he looked at his examination, and he came to the conclusion that this was caused by coalmine dust exposure. Were there new tests conducted that were not presented at the fourth claim? Were there new and different tests? Yes. Yes. There were new pulmonary function studies. There were new diffusion capacity studies. And Dr. Cowan also, there were x-rays taken. So Dr. Cowan looked at all of this data and But Mr. Solomon says the x-rays are meaningless. Well, of course he would say that. The x-rays are not irrelevant. The ALJ found them indeterminate too, though, right? Didn't the ALJs? That would be true at that level. But since that time, I also want to say we've had amendments to the Black Lung Act. But we're dealing with what's in front of us, right? Correct. And what the ALJ did. Right. But the reason why he would say that would be if you look at the x-ray evidence now under the law as it is today, Mr. Solomon would lose that argument that the x-rays do not show medical pneumoconiosis because Well, that may or may not be, but that takes us into someplace that LBs have a larger argument here, right? Right. Now looking at Dr. Cowan's report, he says, quote, and this is on the page you cited us to, the striking thing is that Mr. Comelli has always had significant diffusion impairment, which is not a feature of asthma. Rather, it is a feature of chronic obstructive pulmonary disease, particularly emphysema, dot, dot, dot, such as seen in coworkers' pneumoconiosis. So how do you respond to Mr. Solomon's argument that that's not a statement that from which an ALJ could say, oh, I've got a doctor who, based on new diffusion tests, is understanding that something is emerging now which hadn't been evident before. I've got a doctor who just flat disagrees with what was already decided and finally determined on the last go-round. Well, because the diffusion capacity study continued to deteriorate, which is consistent with coal mine dust exposure, not necessarily consistent with asthma. Further, I don't think that a judge is limited to the past litigation and determination. He looks at the new evidence that comes in. He looks at the set of data and the new, the judge, or the doctor's opinions. And in this particular case, the judge determined that legal pneumoconiosis was present at this time. And the judge testified that he now found asthma, or not asthma, emphysema in Mr. Camelli. And he could not rule out the possibility that that emphysema was contributed by coal mine dust exposure. Well, let me ask you to think about a case that was cited by the director, the Wyoming District Court. That court says, one of the elements of proving a successful claim for benefits is showing that any pneumoconiosis arose at least in part out of coal mine employment. Unlike the other two elements of a benefit claim, and then the court says, like the existence of pneumoconiosis and total disability, this element is not technically progressive. That is, I take the court to be saying, when you're tracing causation, something, whether it is or isn't related to coal mine dust exposure, that's something that you decide. You either decide it is traced to that, or you decide it's not traced to that. Do you agree or disagree with the Tenth Circuit's view on that? What I think in that particular case is that pneumoconiosis is a disease process which can progress. And therefore, the causation, you have to look at the data set to determine if there is a progression in this case, in a miner's health picture. And if that is, if there is a progression, then you look at all of the data. Doesn't progression assume that it's there? I guess that's the thing I keep hearing the petitioner go back to again and again and saying, in effect, they're talking about progression, but this was never a case about progression. We had it adjudicated that it was asthma, and it wasn't related to the coal mine. And now we've got just a new result saying, hey, it is related to the coal mine. And their apparent frustration is, how can that be? How can it be that we have a final adjudicated determination of causation unrelated to coal dust exposure, and now we've got one? How's that progression of a disease and not just the changing of the factual premises? Well, I don't think the judge made the ruling that Mr. Comelli had asthma caused by coal mine dust exposure. The judge didn't make that determination. The judge made the determination that now, at this point in time, in Mr. Comelli's fifth claim, he now had pneumoconiosis. And once he made that determination, then he looked to see if that pneumoconiosis was a substantial contributing factor in Mr. Comelli's pulmonary disability. Is that consistent with the medical literature? In other words, I understand that Mr. Comelli left work in 1985. That is correct. And that this finding of pneumoconiosis was made in 2002. That is correct. So we're talking about 17 years. Is pneumoconiosis late dormant for that period of time, and all of a sudden can be diagnosed 17 years later? Yes. Pneumoconiosis is a latent progressive disease process that often... So although it was there latent, all of the other exams missed it or could not have detected it, but it was finally detected in 2002? Well, I mean, I'm not going to speak to the medical literature because I'm not a doctor, but I've been doing black lung claims for 20-some years. And what all the doctors state is that the dust and the silica that is associated with the dust lays dormant in one's lungs. You don't get rid of that. And everybody has a different process as to how that disease or how those effects in one's lungs progresses. Some people it may progress rapidly. Some people it may not progress rapidly. In Mr. Comelli's case, it didn't progress rapidly. But he now, it was determined, had legal pneumoconiosis. And that pneumoconiosis, just because he may have been disabled from asthma, does not preclude a finding of disability caused by another disease process. And in this case, the judge ruled that the pneumoconiosis was a substantial contributing factor in the disease, in the disability. Is there a finding in Congress that maybe that was considered in permitting subsequent claims to be filed based on material, new evidence? Well, absolutely. Well, that's the reason why we have the ability to file additional claims, subsequent claims, in the black lung realm because of the latent progressive nature of coal mine dust exposure and pneumoconiosis. If you want to get Mr. Joyner, can I ask you further? I apologize and impose on my colleagues in this way, but something I had meant to ask Mr. Solomon and want to ask you as well as Mr. Joyner is, the regulation 725.309D was amended in 2001 to take out the material change language, which had generated some controversy. Do those cases about material change have any bearing at all on understanding what 725.309D means today? Do they give any insight or is that all just old news now that the language has changed? Well, I think that the Third Circuit here has taken the stand that a material change condition is showing an element that has not been established in a previous claim. So the precedence about material change are still meaningful, you think, because the new regulation embodies an interpretation of what material change meant? Well, I think material change is relevant to the black lung realm. I realize that the Third Circuit, your court has determined that it's establishing an element that has not been established in a previous claim. And here, that was the presence of pneumoconiosis. So is it fair to say that Mr. Comelli's position is that with the new language of 725.309D is still, in looking at what's happening, are looking for material change? The language of the reg tells you how to figure out whether there's a material change, but you're still looking for a material change. Is that what you're saying? Well, I'm saying that in a subsequent claim, you do have to establish a material change. And this Circuit has determined that a material change is something that has not been established in a previous claim. In Mr. Comelli's case, that was the presence of pneumoconiosis. And Your Honor, one thing before I go, I would like to just say that the Fourth Circuit in Lisa Lee Mines said something that I think is most relevant in black lung claims. It said it's almost too obvious to comment the res judicata does not apply if the issue is a claimant's physical condition or degree of disability at two entirely different times, particularly in the case of occupational diseases. That is what is happening here. It's two different claims at two different times. It's not the same claim. Thank you, Ms. Cowens. Mr. Joyner? Good afternoon, Your Honors. May it please the Court, my name is Barry Joyner, and I work in the Office of Workers' Compensation Programs. I'd like to begin by addressing Judge Jordan's question about the revised version of Section 725.309. The precedents developed under the old regulation, Your Honor, are indeed still relevant because the new regulation, as is described in the preamble to the regulations, is a codification of this Court's decision in Swero, as well as the decisions of the Fourth, Sixth, Seventh, Eighth, and Eleventh Circuits, all of which adopted what was referred to as the one-element standard. So it's all aimed at trying to figure out if there's a material change, right? That is correct, Your Honor. Is the decision concluding that there is no pneumoconiosis present at that time ever final? Your Honor, it's certainly final with respect to the question of whether or not the minor, Mr. Pennelly in this case, had pneumoconiosis at the time of a prior claim. Then, okay. So after that, he can file a, it's not final because he can file another claim saying, I now have disabling pneumoconiosis and here's why. Well, Your Honor, when he files the new claim, that's a separate cause of action addressing a different question. His fourth claim addressed the question, was he totally disabled by pneumoconiosis at the time he filed that claim? My question is, the issue is never precluded if he can come forward with new evidence. That's right, Your Honor. And the reason is because it's a separate issue. It's not the same issue. Because it was conclusively determined in 2002 that at the time of Mr. Pennelly's fourth claim, he didn't have pneumoconiosis. All right. That decision was not appealed. Then the next time around, if there is new evidence from which a finding was made and the company doesn't contest the findings of fact, then why isn't the case all over? I believe in, even if the company does not, are you referring to this particular case? Well, in this case, I think because this case is over, Your Honor, Swerow controls this case. Swerow says that race judicata and collateral estoppel do not bar subsequent claims. And those were the only arguments made by Canterbury Coal in its opening brief. Wouldn't you agree that the whole point of Swerow is that you can't stop somebody from, and the way you've just framed it, from making a subsequent claim based on something that's different or materially different in the miner's physical health, right? That's correct, Your Honor. And the Seventh Circuit, I'm sorry. Well, let me just tell you, I think, I hope we're all on the same page here. I mean, it wouldn't be enough, would it? I mean, the Director's position isn't it that you could take the very same evidence and get a new doctor to come in and say, well, you know what, that other guy was full of baloney. I'm telling you now, it's pneumoconiosis, it's not asthma. They couldn't do that, could they? They cannot go back and say, this man should be, he was totally disabled then. No, the doctor has got to look at his physical condition subsequent to the denial of the prior claim. Right, and doesn't there have to be something different in the miner's condition? I mean, if the miner is in exactly the same physical condition that the miner was when it was all denied before, you couldn't say, oh, well, we got a new expert to say something different. There has to be, I mean, isn't that the whole notion of material change? There's something different in the miner, right? That is correct, Your Honor, that something has changed, but what you look to to see what has changed is you look to the decision in the prior claim. As Judge Hall so eloquently put it in the Fourth Circuit's decision in Lisa Lee, it's that decision in the prior claim that's the only solid thing you can look at. The fact of the prior claim here is that Mr. Comelli failed to prove that he has pneumoconiosis. What do you look at in determining whether there's a material change? Is it a difference in the finding on the subsequent claim, or is it the presence of new evidence? You look at what the finding was in the prior claim. You see whether there is new evidence on the finding on which the miner lost in the prior claim. In this case, Mr. Comelli lost on the issue of pneumoconiosis in his prior claim. He failed to prove that he had the disease. He came forward with new evidence addressing his position subsequently. He's saying that he does have pneumoconiosis. Mr. Joyner, wasn't more than, I mean, the Canterbury Coal presses again and again and says it was, there was a determination, a legal determination that this man's pulmonary problems were caused by adult onset asthma, not by coal dust exposure. That was a determined fact. That's really not correct, Your Honor. The issue before the ALJ in the fourth claim was whether or not Mr. Comelli proved that he has pneumoconiosis. That is what the ALJ found there. That's the only thing he found. It was not his job to determine what it was that was wrong with him other than pneumoconiosis. In fact, the ruling was that the evidence was insufficient. That's right. The only question for him was, did Mr. Comelli come forward with sufficient, credible, probative evidence to show that he had pneumoconiosis? The ALJ in the prior claim said no. Okay. So what is your response to the argument made by Canterbury Coal that we've got, the only evidence that we've got in this record is the evidence underlying the fourth, and by the ALJ, that this was adult onset asthma unrelated to coal dust exposure, and that at the fifth round, the evidence that was finally credited by the ALJ was directly to the contrary of that, and that that amounts to a revisiting of an issue, if not the ultimate issue, at least a significant issue in the case, and that therefore, so even if raised adjudicata didn't exist, collateral stop will ought to stop him from coming in and relitigating what the cause of this man's pulmonary distress is. Well, Your Honor, there's a couple of responses to that. First, on a factual matter, you know, Dr. Cohen didn't say this man, you know, had pneumoconiosis back then. He said that based on the evidence I've looked at now, Dr., that Mr. Comelli does have pneumoconiosis. You can look at a new round of x-rays, pulmonary function studies, whatever. The other thing to bear in mind is that with respect to asthma, asthma is at least to an extent a treatable disease. It can get better. Pneumoconiosis can't. What's more, even if Mr. Comelli were totally disabled by asthma in the prior claim, let's assume that that was what was found and that's what actually happened, and that at this point, he still has asthma that would in itself be totally disabling, he can still recover if he establishes that he has subsequently also developed pneumoconiosis and that that pneumoconiosis has made his already compromised physical condition materially worse. That's specified in the regulations at 718-204C. So a negative finding of pneumoconiosis, you don't have the disease. That could never stop a subsequent claim so long as there's new evidence. Would that be accurate? So long as you have new evidence that addresses the condition of the minor subsequent, yes. I mean, you couldn't come forward with new evidence of his condition many years ago, but if it's new evidence that addresses his condition subsequent to the denial of the claim, that's correct, Your Honor. That's very helpful. Thank you very much. Thank you, Your Honor. Mr. Solomons? Judge Fuentes, I'd first like to respond to a question that you asked. It wasn't really a question. It was, I guess, more of an observation. There is no congressional authority to do this, period. There is no legislative history to file a subsequent claim. That's right. There is no legislative history to support it, period. And the reason why we raised the story of federal savings and loan in the Texas cases is because part of the argument is that unless Congress grants the authority to waive finality, it cannot be done by the agency. And that's what they've done. But that's not even, that's not the central issue of the case. But I want you to understand, this is not something Congress did. This isn't even something Congress considered. Now, a couple other points. One is that if you look at this fairly, you can come to the right. But there is a statute there. Now, here we do have a statutory provision, which allows the correction of mistakes. He's not saying that adjudication four was wrong. He's just saying adjudication now is correct. No. Dr. Cohen said that he didn't have asthma. Adjudication four, in order to accept Dr. Combs... There was no finding, any finding. They could have, that guy, the previous ALJ who said no pneumoconiosis, he could have said the guy's a hypochondriac. That would have been dictum. He could have said he's nuts. That would have been dictum. He could have said he had asthma. That's dictum. No, it isn't. No, it's not. What the issue was before that forum was whether he had pneumoconiosis. And he said, no, not now. That's not true, Your Honor. There's nothing in any statute or regular... Department of Labor's testimony here, first of all, is offensive to me, because it's all wrong. And second of all, the description of what the Administrative Law Judge's powers are is completely wrong. The Administrative Law Judge operates under the APA. Under the APA, he's supposed to decide all of the issues that come before him for presentation. One way to determine a minor doesn't have pneumoconiosis is to determine he's got something else. This Administrative Law Judge found he had asthma. That's not dictum. I have no understanding of how that could possibly be dictum. If he says, can you cite us to where in the record he says, because I got a real difference here coming at me from both sides, with the respondent saying he said there was insufficient evidence to conclude pneumoconiosis, but that he did say it's asthma. And their position is that's perfectly consistent with a later finding that pneumoconiosis has developed. It could develop in the presence of or in the absence of adult-onset asthma, but the fact that you didn't have it before doesn't mean you can't get it later. It can't manifest itself later. Well, the ALJ-4's decision is around, I mean, his conclusions of law are in Appendix 67, 68. Okay. So here's what I'm, you know, instead of us all characterizing what he said, I'm asking you to show me where he gets specific and says anything more damning than what the respondents have said he said, which is you just haven't proved pneumoconiosis. You want to look at Appendix 76? I'm looking at, well, 72. Well, I'll quote you something from 76 and have you respond to it. Okay. Therefore, claimant has not established that pneumoconiosis, medical or legal, was a substantially contributing cause to this totally disabling respiratory or pulmonary impairment. Now, is there something in that that would prevent a later ALJ from saying, well, I got new evidence in front of me. I'm satisfied that there now is sufficient evidence. Well, that's his conclusion of law, not his finding of fact. And in the findings of fact, I'm looking at Appendix 72 and 73, and it's, okay. I find his, well, I mean, you know, he finds, he credits the doctors who found asthma. There's no doubt about that. Dr. Ackwood, Pickrell, and Fino conclude the minor's obstructive pulmonary condition is due to asthma. I don't disagree with you about that, Mr. Solomons. If I could impose on my colleagues for one minute, you want to respond to the question about material change. Do you agree that material change is still a relevant inquiry? Well, if it isn't, then it clearly violates principles of finality. Right. Especially with no statutory authority. Right. So it's the fact that the new regulation is supposed to embody the idea that there is a material change, which is what would save it as from clearly violating principles of finality, right? And that's what they told the, I was there, it was my case, that's what the Department told the D.C. Circuit, was that. In national minds. In national minds. It also told them that pneumoconiosis in, well, let me say it's the Justice Department, told them that pneumoconiosis in its most common forms was not latent. Right. Not latent, and rarely progressive. Okay. And I will tell you something else. There is no science in this universe, I won't say that, this world, that shows that somebody could get pneumoconiosis 17 years out of the mines. Say that again? There is no science in this world to establish, or even hint at, where any scientist has concluded you could get pneumoconiosis of this type, that is legal pneumoconiosis, 17 years out of mining. But that would take us to a place we can't really go on. I understand what I'm asking you to. Okay. But I would say, and I guess we've gotten beyond that, but in Swarrow, in LaBelle, on I mean, as part of that. Okay. We have to finish up, Mr. Solomons. Thank you very much. And thanks to all of you for a well-presented case. We'll take the matter under advisement.